Louisville Southern Railroad Company v. Minogue.

---

CASE 60—PETITION ORDINARY—SEPTEMBER 18.

# Louisville Southern Railroad Co. v. Minogue.

### APPEAL FROM SHELBY CIRCUIT COURT.

1. QUESTION FOR JURY.—Whether the defendant was guilty of gross neglect was a question for the jury.

2. EXCESSIVE VERDICT.—Where a verdict for either compensatory or punitive damages, or both, is for so large an amount that it can be accounted for only upon the theory that it is the result of an improper sympathy or unreasonable prejudice, it should be set aside as excessive.

    In this action against a railroad company by a passenger to recover for injuries received through the alleged gross neglect of defendant, it appears that the plaintiff sustained external bruises, and her nervous system was greatly shocked. She was confined to her bed seven or eight weeks, and since she left her bed has been unable to do any work. The accident occurred in October, and the case was tried in the following March. Physicians testify that plaintiff may entirely recover and that she may not. *Held*—That as there was no bad motive or purpose to injure, and the neglect was not so wanton as to demand the severest punishment, a verdict for ten thousand dollars should be set aside as excessive.

3. THE FUTURE EFFECT OF AN INJURY should be shown with reasonable

Louisville Southern Railroad Company v. Minogue.

certainty to authorize damages upon the score of permanent injury.
A mere conjecture, or even a probability, does not warrant the giving
of damages for future disability which may never be realized.

4. DUTY OF RAILROAD COMPANIES TO PASSENGERS.—Railroad com-
panies, as to their passengers, should be held to the exercise of the
utmost care and skill which prudent persons would be likely to
exercise as to themselves under the like circumstances, and in the
conduct of a business so hazardous as railroading

THOMAS W. BULLITT FOR APPELLANT.

1. Punitive damages are not to be awarded for negligence except where
it has been so gross and reckless, or accompanied with such circum-
stances of outrage or wrong, as to demand punishment at the hands
of the jury; and whether the proof establishes such degree or char-
acter of negligence is not exclusively for the jury acting "as they
may deem proper;" but it is an imperative duty of the trial-court to
limit the finding to compensatory damages, unless the evidence con-
duces to show circumstances of aggravation demanding punishment.
(Lou. & Port. R Co. v. Smith, 2 Duv., 557; Ky. Cent. R. Co. v. Dils,
4 Bush, 595; L. & N. R. Co. v. Sickings, 5 Bush, 10; L. & N. R. Co.
v. Roberts, 10 Ky. L. R., 528; Chiles v. Drake, 2 Met., 151.)

The principle stated in the cases above cited has not been overruled
or modified by the following cases: L. & N. R. Co. v. Collins, 2 Duv.,
115; L., C. & L. R. Co. v. Cavens, 9 Bush, 563; Maysville & Lex. R.
Co. v. Herrick, 13 Bush, 127; L. & N. R. Co. v. McCoy, 81 Ky., 403;
L. & N. R. Co. v. Mitchell, 87 Ky., 327; Needham v. L. & N. R. Co.,
9 Ky. Law Rep., 61.

2. The instruction upon the subject of compensatory damages does not
contain a correct definition of ordinary negligence or of ordinary
care. It was error to tell the jury that it was the duty of defendant's
servants to guard against injury to plaintiff *as far as human care and
foresight could have reasonably enabled them to do.* (Louisville City
Railway Co. v. Weams, 80 Ky., 420; Lou. & Nash. R. Co. v. Ritter's
Adm'r, 10 Ky. L. R., 22.)

L. C. WILLIS ON SAME SIDE.

1. There was no evidence in this case on which to base an instruction as
to gross negligence. (Maysville, &c., R. Co. v. Herrick, 13 Bush, 127;
L. & N. R. Co. v. McCoy, 81 Ky., 403; L. & N. R. Co. v. Mitchell, 87
Ky., 327; Needham v. L. & N. R. Co., 9 Ky. Law Rep., 61.)

And in the absence of such evidence the court should have confined
the jury to compensatory damages. (Ky. Cent. R. Co. v. Dills, 4
Bush, 593; L. & N. R. Co. v. Sickings, 5 Bush, 1; Lou. & Port.
R. Co. v. Smith, 2 Duv., 556; L. & N. R. Co. v. Roberts, 10 Ky. Law
Rep., 528.)

2. It was error in instructing the jury to give undue prominence to a portion of the testimony. (Stokes' Ex'rs v. Shippen, 13 Bush, 180; Flood v. Pragoff, 79 Ky., 617.)

3. The verdict is excessive. (Chicago West. Div. R. Co. v. Hughes, 87 Ill., 94; C. R. I. R. Co. v. McAra, 52 Ill., 296; C. R. I. & P. R. Co. v. McKittrick, 78 Ill., 619; C. R. I. Co. v. McKean, 48 Ill., 218; Chicago City R'y Co. v. Henry, 62 Ill., 145; C. & N. W. R. Co. v. Jackson, 55 Ill., 492; Sioux City & Pac. R. Co. v. Finlayson, 18 Eng. & Am. Railroad Cases, 68.)

G. G. GILBERT FOR APPELLEES.

1. "Error of law occurring at the trial and excepted to by defendant at the time" is too indefinite as a ground for new trial. (McClain v. Dibbel, 13 Bush, 297; L. & N. R. Co. v. McCoy, 81 Ky., 403.)

2. While railway passenger carriers do not insure the absolute safety of their passengers, they do bind themselves to exercise the *utmost* degree of human care, diligence and skill in order to carry their passengers safely. (L. & N. R. Co. v. Ritter's Adm'r, 9 Ky. Law Rep., 22; Redfield on Railways, vol. 2, p. 229; Railroad Co. v. Varnell, 98 U. S., 480; O. & M. Packet Co. v. McCool, 8 Am. & Eng. Railroad Cases, 394; Stokes v. Saltenstall, 13 Pet. (U. S.), 1£3.)

3. Where the suit is brought under the statute for willful neglect, punitive damages can not be allowed, unless the neglect of the corporation, its servants or agents, is so great as to evidence reckless indifference to the safety of the public, or an intentional failure to perform a plain and manifest duty, in the performance of which the public has an interest. (Jacobs' Adm'r v. L. & N. R. Co., 10 Bush, 273; 9 Bush, 522; Claxton's Adm'r v. Lex. & B. S. R. Co., 13 Bush, 636.)

This, however, is not an action under the statute, but under the common law, where the rule is quite different. To enable a passenger to recover punitive damages in cases like this, it is not necessary to show the absence of all care or reckless indifference to the safety of passengers, or individual misconduct on the part of the agents and officers of the company. (Maysville & Lex. R. Co. v. Herrick, 13 Bush, 127; L. & N. R. Co. v. McCoy, 5 Ky. Law Rep., 407; Wood on Railways, vol. 2, p. 1242, note 3; Ky. Cent. R'y Co. v. Dills, 2 Duv., 594.)

4. The court gave a correct definition of gross neglect. (L. & N. R. Co. v. McCoy, 5 Ky. Law Rep., 404; Wood on Railways, sec. 301.)

5. Where the testimony is conflicting as to the question of negligence, the jury have the right to decide the character of negligence, whether it be gross or ordinary. (L. & N. R. Co. v. Collins, 2 Duv., 114; Wood on Railways, p. 1063.)

6. The verdict is not excessive. (L. & N. R. Co. v. Brooks, 83 Ky., 137; L. & N. R. Co. v. Moore, 83 Ky., 678; Ky. Cent. R'y Co. v. Mc-

Louisville Southern Railroad Company v. Minogue.

Murtry, 3 Ky. Law Rep., 625; Ill. Cent. R. Co. v. Parks, 88 Ill., 373; Belair v. Chicago & N. W. R. Co., 43 Iowa, 662; Chicago & Alton R. Co. v. Wilson, 63 Ill., 167; 38 Ia., 592; Breg v. Chicago, &c., R. Co., 50 Wis., 419; Robinson v. Western Pac. R. Co., 48 Cal., 404; Chappin v. N. O. & Can. R. Co., 17 La., 19; cases cited in L. & N. R. Co., v. Fox, 11 Bush; Greenleaf on Evidence, sec. 255.)

R. C. DAVIS, MATT O'DOHERTY on same side.

1. The evidence establishes gross negligence on the part of defendant's agents.

    Acts less blameworthy have been held by this court to amount to gross neglect, and even to willful neglect. (McLeod, Receiver, v. Ginther, Adm'r, 80 Ky., 406; L. C. & L. R. Co. v. Cavens, 9 Bush, 564; L. & N. R. Co. v. Moore, 83 Ky., 681.)

2. The highest degree of care is required of a railway passenger carrier. (Philadelphia, &c., R. Co. v. Derby, 14 How. (U. S.), 486; Steamboat, &c., v. King, 16 How. (U. S), 474; Railroad Co. v. Aspell, 23 Pa., 147; Railroad Co. v. Kennard, 21 Pa., 203; Cornwall v. Railroad Co., 28 N. H., 169; Carroll v. Railroad, 58 N. Y., 133; Stokes v. Saltenstall, 13 Peters (U. S.), 191; Railroad Co. v. Smith, 2 Duv., 557.)

3. To constitute gross neglect it is not necessary that there should be an absence of all care. (Railroad Co. v. Herrick, 13 Bush, 127.)

4. Where, as in this case, the facts constituting the negligence complained of are conceded or established by the defendant's own evidence, the question of negligence and its degree become questions of law for the court. (Empire Coal Co. v. McIntosh, 6 Ky. Law Rep., 635; Witty v. Railroad Co., 83 Ky., 22.)

5. The verdict is not excessive.

PRYOR J. FOREE of counsel on same side.

CHIEF JUSTICE HOLT delivered the opinion of the court.

A train of the appellant was delayed by the airbrakes failing to work. It was overtaken by a construction train of the company, which was known to those in charge of the passenger train to be but a few minutes behind it, and a collision occurred, the only damage to the passenger train being the destruction of the rear platform of its rear car. The appellee, Mary J. Minogue, who was a passenger upon it, was,

by the jar of the collision, thrown from her seat to the floor of the car in which she was riding, and for the injuries she thereby sustained she brought this action for damages, averring that they resulted from the gross neglect of the appellant's agents who were operating the trains. It is claimed this neglect consisted in failing to exercise care in flagging the coming train.

The evidence is somewhat conflicting as to whether this was done in time to have enabled it to stop before overtaking the passenger train; but whether the fault lay in neglect in this respect, or in the rear train, if it had sufficient notice to enable it do so, failing to check up, need not be considered, because, whether the one or the other, the testimony is of such a character as authorized the question of the existence or non-existence of gross neglect upon the part of the company's agents to be submitted to the jury.

They returned a verdict for ten thousand dollars. It is urged that this verdict is, in view of the evidence, so excessive that, conceding it embraces both compensatory and punitive damages, yet this court should reverse the judgment. The existence of ordinary neglect in such a case authorizes compensatory damages, while gross neglect permits the jury to award those which are both compensatory and punitive. In this instance, the jury, if they thought proper, were authorized by the instructions to find both. Whether they have gone beyond a reasonable limit must be determined by the conduct of the company's agents connected with the accident, and the character of the appellee's injuries. While the rule for the measure-

ment of compensatory damages leaves the matter largely to the discretion of the jury, yet the finding must be within the confines of reason. So, too, must exemplary damages be reasonably adequate to the degree of fault.

The appellee sustained external bruises, and her nervous system was greatly shocked. There is evidence tending to show, however, that it had been somewhat impaired by previous events. Immediately after the accident she walked to a friend's house near by, and soon after rode home in a vehicle, a distance of several miles. She was confined to her bed for seven or eight weeks, and suffered from nervousness and sleeplessness. Since she left her bed she has walked about her room, and been to town once or twice, but has been unable to do any work. The accident occurred in October; the case was tried in March following, and this, briefly stated, was her condition during that period. None of her bones were broken, but at one time since the accident, if not ever since, she has been troubled with partial paralysis, or an insensibility in one leg from the knee down.

The probable duration of her injuries is not shown by the testimony. Whether they are of a permanent character does not appear. The medical testimony which was introduced is utterly unsatisfactory in this respect. The burden rested upon the appellee to show the extent of her injuries. If of a permanent character, she should have shown it. A perusal of the evidence creates no satisfactory opinion upon this point, and leaves the matter in entire doubt. The physicians who testified say she may recover entirely and she may not.

It is impossible to measure with any thing like absolute certainty the amount of punitive damages proper in a case, or the extent of some of the elements of those which are compensatory. The opinion of a jury has been, and properly no doubt, regarded as the best means of even a fair approximation, and every verdict should be treated *prima facie* as the result of honest judgment upon their part. They are the constitutional triers of the facts of a case, and courts should excercise great caution in interfering with their verdicts. Litigants must not be left, however, to their arbitrary will, and be without remedy in cases where verdicts can be accounted for only upon the theory that they are the result of an improper sympathy or unreasonable prejudice. In such cases it is one of the highest duties of a court to interfere, otherwise great wrongs will often result, and the party be remediless. Whether it should do so is more easily determinable in a case where compensatory damages only are allowable, because they, in part, admit of exact measurement. In such cases this court has often reversed the jury's finding. We see no reason why it should not do so in a case like this one, but with increased caution perhaps.

In the case now presented there was no intentional injury. An effort was made to flag the coming train, and those in charge of it attempted, upon notice of the danger, to stop it. Whether these efforts were of such a character as left the company open to the charge of gross neglect was a question for the jury; but no purpose to injure is shown; and while it was properly a question for the determination of the jury

whether the company's agents had not been guilty of such neglect as merited punishment by way of punitive damages, yet, in our opinion, a case was not presented by the evidence for a verdict of ten thousand dollars, either upon the score of punishment or compensation, or both. It is true that railroad companies, as to their passengers, should be held to the exercise of the utmost care and skill which prudent persons would be likely to exercise as to themselves under the like circumstances, and in the conduct of a business so hazardous as railroading; but in the absence of bad motive or purpose of injury, or a neglect so wanton as to demand the severest punishment, and where it is utterly uncertain what the result of an injury will be, a verdict for such a sum as has been awarded to the appellee strikes one at first blush as the result of either prejudice toward the offending party or an undue sympathy for the one injured.

While absolute certainty as to the result of an injury should not be required, yet a mere conjecture or even a probability do not warrant the giving of damages for future disability, which may never be realized. The future effect of the injury should be shown with reasonable certainty to authorize damages upon the score of permanent injury. This was not done in this case. The evidence shows that the appellee is as likely to entirely recover, and perhaps in a short period of time, as she is to be permanently affected by the injury.

To sustain a verdict like this one under such circumstances would often result in the grossest injustice, and its existence can be accounted for only upon

the ground that the jury were swayed by prejudice or an improper controlling sympathy.

The judgment is, therefore, reversed, and cause remanded for a new trial consistent with this opinion.

90   377
96   253
90   377
101   261

90   377
119   96

90   377
f122   654
j124   145

90   377
130   276

CASE 61—PETITION EQUITY—SEPTEMBER 13.