Louisville & N. R. R. Co. v. Brown.

CASE 69.—PERSONAL INJURY ACTION BY HARRY BROWN
    AGAINST THE LOUISVILLE & NASHVILLE R. R.
    CO.—January 9.

# Louisville & N. R. R. Co. v. Brown

Appeal from Hopkins Circuit Court.

J. F. GORDON, Circuit Judge.

Judgment   for   plaintiff,   defendant   appeals—
Reversed.

1. Master and Servant—Railway Trainmen—Gross Negligence.—
   It was grossly negligent towards those on an approaching
   train for the engineer and conductor of a work train to per-
   mit it to stand on a main track on the other train's time,
   though the engineer directed the brakeman to flag such other
   train; the brakeman's failure to do so being also gross
   negligence.

2. Same—Fellow Servants.—The engineer, conductor, and brake-
   man of a train, which they negligently permitted to stand on
   a main track on another train's time, were not fellow serv-
   ants of a brakeman on the other train, in the sense that he
   could not recover from the company for injuries received in
   the collision resulting from such negligence.

3. Same—Superior Officers.—The rule that no recovery may be
   had from a master for injury to a servant, not causing death,
   resulting from the servant's superior officer's ordinary negli-
   gence, is limited to cases in which the superior officer has
   immediate control of or supervision over the servant.

4. Same—Fellow Servants.—A servant may not recover from the
   master for injuries inflicted by the negligence of a fellow
   servant in the same grade of employment engaged in the
   same field of labor, and associated or working with the
   injured servant, however gross such negligence may be; but
   recovery may be had for the negligence of other of the mas-
   ter's servants, whether it be ordinary or gross.

5. Damages—Personal Injuries—Evidence—Admissibility.—In an
   action against a railway company for injury to plaintiff in a

wreck, he could show mental anguish and pain suffered while pinioned in the wreck and in momentary danger of be- ing burned to death.

6. Evidence—Photographs.—Photographs of a railway wreck, their accuracy being shown by the photographers, are ad- missible in evidence in an action against the company for injuries received in the wreck.

7. Damages—Personal Injuries—Excessive Verdict.—Ten thou- sand dollars is an excessive recovery for injury to a foot and other parts of plaintiff's body, where the injuries do not appear to be permanent, though punitive damages are allow- able.

8. Appeal—Review—Damages.—The court of appeals has the same power to set aside a verdict involving punitive dam- ages as it has where only compensation is recovered, and in every case, if the verdict appears to have been given under the influence of passion or prejudice, a new trial will be granted.

BENJAMIN D. WARFIELD for appellant.

CLIFTON J. WADDILL of counsel.

POINTS AND AUTHORITIES DISCUSSED.

1. The petition alleges that appellee's injuries were due to the gross negligence and carelessness of "the agents and servants of defendant in charge of said trains, and superior in authority to plaintiff," therefore the court erred in permitting testimony to go to the jury as to the alleged negligence of the flagman of the work train, who was the co-equal and not the superior of appellee, and in so instructing the jury as to authorize them to find for appellee on account of the negligence of the flagman. Appellee, having elected to specify wherein the negligence con- sisted upon which he based his claim for recovery, could not recover by showing a different character of negligence to that alleged. (L. & N. R. R. Co. v. McGary's Admr., 104 Ky., 509, 517; McCain v. L. & N. R. R. Co., 13 Ky. Law Rep., 334; Greer v. Ib., 94 Ky., 169; I. C. R. Co. v. Elliott, 26 Ky. Law Rep., 669; Howard v. C. & O. Ry. Co., 28 Ky. Law Rep., 891, and cases there cited.)

2. The court erred in striking from appellant's answer the averment that the collision in which appellee was injured was due solely to the ordinary negligence of the flagman of the work

train. (L. & N. R. Co. v. Robinson, 4 Bush, 507; Robinson v. L. & N. R. Co., 15 Ky. Law Rep., 626; Volz v. C. & O. R. Co., 95 Ky., 188; Dana & Co. v. Blackburn, 28 Ky. Law Rep., 695; L. & N. R. Co. v. Dillard, 86 S. W., 313; L. & N. R. Co. v. Foard, 104 Ky. on p. 464.) Even if the pleadings had so authorized, there could be no recovery for the negligence of any employe of the work train unless such negligence was gross. Under the pleadings it was necessary to prove gross negligence of the conductor of the work train to authorize a recovery. There is no proof of that degree of negligence on their part.

3. The court erred in permitting the introduction of appellant's rule 99 as evidence, for the reason that the rule was only pertinent upon the question as to whether the flagman of the work train was negligent. The petition not seeking a recovery on account of the flagman's negligence, testimony on that point was irrelevant and incompetent.

4. Appellee's testimony that he believed, while under the wrecked engine, that he was in danger of being burned, as well as the testimony of other witnesses on this point, and as to the proximity to appellee of the dead fireman under the wreck, was incompetent and highly prejudicial to appellant. There can be no recovery for mental anguish not accompanied by, or traceable directly to, contemporaneous physical injury. (Morse v. C. & O. R. Co., 117 Ky., 11; Hockenhammer v. L. & E. R. Co., 24 Ky. Law Rep., 2383; Victorian Ry. Comrs. v. Coultas, 13 App. Cas., 222! Atchison, etc., R. Co. v. MvGinnis, 41 Kas., 109; Spade v. Lynn, etc., R. Co. 172 Mass. 488, 70 Am. St. Rep. 298, 168 Mass. 285, 60 Am. St. Rep. 393; Trigg v. St. Louis, etc., R. Co., 74 Mo. 147, 41 Am. St. Rep. 305; Deming v. Chicago, etc., R. Co., 80 Mo. App., 152; Gatzow v. Beuning, 106 Wis. 1, 81 N. W. 1003, 49 L. R. A. 475, 80 Am. St. Rep. 17.)

5. The court should have submitted to the jury the issue made by the pleadings and evidence as to whether appellee was properly or improperly upon the engine at the time of the collision. The court erred in assuming as a matter of law in instructing the jury that appellee was properly on the engine.

6. The court erred to appellant's prejudice in permitting witness Shaver to testify that there was no one in the caboose of the work train at the time of the collision. Under the pleadings this testimony was immaterial.

7. The court erred to appellant's prejudice in admitting any of the evidence of appellee's witness, John Carroll.

8. The damages are grossly excessive. (South Covington & Cin. St. Ry. Co. v. Ware, 84 Ky., 267; Louisville Water Co. v.

Upton, 18 Ky. Law Rep., 326; L. & N. R. Co. v. Mattingly, Ib. 823; Ib. v. Survant, 16 Ky. Law Rep., 349; Southern Ry. Co. v. Minogue, 90 Ky., 369; L. & N. R. Co. v. Survant, 96 Ky., 197, 208; Covington & Cin. Bridge Co. v. Goodnight, 22 Ky. Law Rep., 1242; L. & N. R. Co. v. Foley, 94 Ky., 220; Ib. v. Law, 14 Ky. Law Rep., 850; Ib. v. Lowe, 25 Ky. Law Rep., 2317; Louisville Ry. Co. v. O'Mara, Ib., 819; Watson, etc., v. Brightwell, 28 Ky. Law Rep., 887.)

9. Every person who is injured or damaged by the act or omission of another must legally do all that he reasonably can to make the injury or damage as light as possible. (John C. Lewis Co. v. Scott, 95 Ky., 484; Cain, by etc., v. L. & N. R. Co.. 27 Ky. Law Rep., 201; I. C. R. Co. v. Gheen, 112 Ky., 695.)

10. The photographs were incompetent as evidence, as, also, was the testimony of J. H. Corbett, and the court erred in not excluding them from the jury.

11. The instructions were erroneous in numerous vital particulars:

(a) In authorizing appellee to recover compensatory damages for ordinary negligence when he could lawfully recover only for gross negligence, and in authorizing a recovery for the negligence of any employe connected with the work train, whereas by his pleadings appellee limited his right to recover to the gross negligence of the engineer or conductor of that train.

(b) In authorizing appellee to recover punitive damages for gross negligence, this being a common law action and not a statutory action under section 241, Ky. Constitution, and section 6, Ky. Statutes. Appellee should have been authorized to recover only compensatory damages for the gross negligence, if any, of the engineer or conductor of the work train, and should not have been authorized to recover punitive damages at all. Where gross negligence is necessary in order to recover compensatory damages, punitive damages should be allowed only where the negligence was so gross as to be wanton and as to call for punishment.

(c) In authorizing damages for the future impairment of power to earn money without requiring the jury to believe from the evidence that it was reasonably certain there would be such future impairment. (L. & N. R. Co. v. Logsdon, 114 Ky., 746, 752; Shearman & Redfield on Negligence, section 758; L. & N. R. Co. v. Hall., 115 Ky., 567; Ib. v. Fox, 11 Bush, 509; Muldraugh's Hill T. P. Co. v. Maupin, 79 Ky., 101; K. C. R. Co. v. Ackley, 87 Ky., 278; Standard Oil Co. v. Tierney, 92 Ky., 367; Parker v. Jenkins, 3 Bush, 581; L., C. & L. R. Co. v. Case, 9 Bush, 736; C. P. R. Co.

Louisville & N. R. R. Co. v. Brown.

v. Kuhn, 86 Ky., 578; Carson v. Singleton, 23 Ky. Law Rep., 1626; S. C. & C. St. Ry. Co. v. Core, decided October 3, &1906.)

(d) Instruction 3 is flagrantly erroneous in that it is made to apply only in the event appellee's injury was not, when inflicted, a permanent one. The instruction leaves out of view the probability of appellee's making his injury worse by failure to exercise ordinary care in effecting a cure. (I. C. R. Co. v. Jackson's Admr., 23 Ky. Law Rep., 1405-6.)

(e) Instructions B, C, and D offered by appellant should have been given.

SYPERT & PHILLIPS for appellee.

## POINTS AND AUTHORITIES DISCUSSED.

1. The flagman of the work train was not the fellow-servant of appellee, and for the purposes of this case was the superior of appellee, and there was no error in the introduction of testimony as to the flagman's negligence, or in authorizing the jury to find for appellee for the flagman's negligence. (L. & N. R. Co. v. Edmuns' Admx. (Ky.), 64 S. W., 727; L. & N. R. Co. v. Lowe (Ky.), 66 S. W., 736; this case is cited in appellant's brief; L. & N. R. Co. v. Dillard (Tenn.), 86 S. W., 313, also cited in appellant's brief.)

2. The negligence of the flagman, in this case, was also the negligence of the engineer and conductor, and this is a further reason why the introduction of testimony and the instruction of the jury as to flagman's negligence was not improper.

3. There was no error in striking from the answer, because the flagman and the appellee were not fellow-servants.

4. There was no error in permitting testimony as to appellee's mental suffering while under the wreck.

(a) Whenever there is contemporaneous physical injury all injury and damage may be recovered. (Denver & R. G. R. Co. v. Roller (U. S. C. C. App.), 49 L. R. A., 77, 85; Tuttle v. Atlantic C. R. Co. (N. J.), 54 L. R. A., 582, 584; Sher. & Redf. on Neg., section 761, and notes 8 and 10.)

(b) This was also admissible as a part of res gestae. (Denver & R. G. R. Co. v. Roller, supra; note to Ohio & Miss. R. Co. v. Stein (Ind.), 19 L. R. A., 733.)

5. There was no evidence on which to submit to the jury the question as to whether or not appellee was improperly on the engine.

6. The damages are not excessive in this case. (L. & N. R. Co.

Louisville & N. R. R. Co. v. Brown.

v. Helm, 28 Ky. Law Rep., 603; C. & O. R. Co. v. Davis (Ky.),
58 S. W., 698; L. & N. R. Co. v. Mitchell, 8 S. W. 706, 87 Ky. 327;
L. & N. R. Co. v. McEwen, 21 Ky. Law Rep., 487; Skottowe v.
Or. Short Line & U. N. R. Co. (Or.), 16 L. R. A., 593, 600; Black
v. Mo. Pac. R. Co. (Mo.), 72 S. W. 559; Galveston, H. & S. A.
R. Co. v. Abbey (Tex.), 68 S. W., 293; also 23 L. R. A., 442, and
31 L. R. A., 855.)

7. The verdict of a jury should be taken as prima facie the
result of honest judgment, and the power to set it aside should
only be used in extreme cases. (Skottowe v. Or. Short Line &
U. N. R. Co. (Or.), 16 L. R. A., 593, 600; L. & N. R. Co. v. Mitchell,
S. W. 706, 87 Ky. 327; I. C. R. Co. v. Stewart (Ky.), 63 S. W.,
596, 599; K. & I. Bridge & R. Co. v. Nuttall (Ky.), 96 S. W.;
1131, 1133.)

8. The testimony shows that appellee did everything he could
reasonably be expected to do to make his injury and damage as
light as possible.

9. The photographs were clearly admissible in this case. (Den-
ver & R. G. R. Co. v. Roller (U. S. C. C. App.), 49 L. R. A., 77,
89; Livermore Foundry & M. Co. v. Union Compress & S. Co.
(Tenn.), 53 L. R. A., 482, 486; Mo., K. & T. Ry. Co. of Texas v.
Magee (Tex.), 49 S. W. 928, 929; Elliott on Ev., vol. 2, sections
1224 to 1228.)

10. The instructions were not erroneous; they were not as
favorable to appellee as he could have demanded; and they were
as favorable toward appellant as could have been asked. Taken
as a whole, they correctly and fairly present the law of the case.

(a) Instruction No. 2, in authorizing damages for time lost and
for any impairment of power to earn money in the future and
for any mental or physical pain or suffering endured is practically
the same as instruction approved in Carson v. Singleton, 23 Ky.
Law Rep., 1626, cited by appellant in its brief.

(b) The negligence in this case was gross, as a matter of law,
and it was not necessary to particularize the degree in the in-
structions. (Railroad Co. v. Mahan (Ky.), 34 S. W., 16; C. &
O. S. W.'s Receiver v. Hoskins (Ky.), 43 S. W., 484; L. & N.
R. Co. v. Helm, 28 Ky. Law Rep., 603; I. C. R. Co. v. Stewart
(Ky), 63 S. W., 596, 599; So. Ry. Co. in Ky. v. Steele, 28 Ky. Law
Rep., 764, 766.)

(c). Punitive damages may be awarded an employe for gross
negligence of another employe. (I. C. R. Co. v. Stewart (Ky.),
63 S. W., 596, 599; L. & N. R. Co. v. Mitchell, 87 Ky. 327, 8 S. W.
706; L. & N. R. Co. v. Moore, 83 Ky. 675.)

11. Mere numerical preponderance does not mean préponder-
vol. 127—47

ance of evidence. (L. & N. R. Co. v. Helm, 28 Ky. Law Rep., 603; I. C. R. Co. v. Colly, 27 Ky. Law Rep. 730, 86 S. W. 536.)

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Appellee, who was a head brakeman on one of appellant's freight trains while riding in the engine, was seriously injured in a head-on collision between the engine in which he was riding and one of appellant's work trains. The work train was on the main track on the time of the freight train, and although the engineer of the work train testified that he directed a brakeman to flag the freight, and supposed he had done so, it developed that he had not, and the freight, running at a high rate of speed, had no notice that the work train was on the track until the engine was within a few feet of it, and when it was too late to stop or reduce the speed or avoid a collision. As a result of the collision, appellee was thrown under a large mass of wood and iron, and so fastened that he could not immediately be extricated. While in this position, where he remained for about an hour, the wreck caught fire, and appellee believed, and, indeed, had good reason to believe, that he would be burned to death before he could be rescued; but fortunately, before the fire reached him, he was removed from his perilous position, and escaped with severe injuries to one of his feet and some other parts of his body. He alleged in his petition to recover damages that "the agents and servants of defendant, in charge of the trains and superior in authority to plaintiff, managed and operated the trains and their crews with such gross negligence and carelessness that they came together in a head-on collision,

whereby he sustained permanent injury and suffered great mental and physical pain." In its answer, after traversing the material averments of the petition and charging that appellee was guilty of contributory negligence, it set up in a separate paragraph that "the collision was due solely to the ordinary negligence of the flagman of the work train, who was then and there in the same field of labor and the same grade of employment as plaintiff in the employ of a common master, and was not superior in authority, but was his fellow servant." On motion of appellee this defense was stricken from the answer. Upon the trial appellee recovered a judgment for $10,000, which we are asked to reverse (1) because the trial court erred in permitting testimony to go to the jury showing the negligence of the brakeman on the work train; (2) in striking from the answer the words before mentioned; (3) in failing to instruct the jury that there could not be a recovery unless the persons in charge of the work train were guilty of gross negligence; (4) in admitting testimony of appellee and other witnesses that while under the wreck of the colliding engines he was in danger of being burned to death; (5) in allowing photographs of the scene of the collision to be introduced in evidence; (6) that the damages are grossly excessive.

We will consider the first, second, and third assignments of error together. It was the duty of the engineer and conductor in charge of the work train to know that proper measures had been taken to flag the freight or notify it that the work train was on the track. They knew the freight was due, and that they were on the main track on its time. Although the engineer testifies that he directed a brakeman to flag the freight, and supposed he had done so, his

attempted performance of duty will not relieve the company from liability for the accident. The conductor and engineer were in control of the work train, and were charged with the duty of taking every possible precaution to see to it that timely warning was given to the approaching freight. They, as well as the brakeman, were guilty of gross negligence, although the company would be liable to appellee if they, or the brakeman alone, had only been guilty of ordinary neglect. Neither the conductor nor engineer on the work train, or the brakeman who participated in their negligence and equally with them was guilty of a failure to discharge his duty, were fellow servants of appellee in the sense that appellee could not recover for their negligence. It has been frequently ruled by this court that a servant for injuries not resulting in death cannot recover from the master for the ordinary negligence of his superior officers. Kentucky Distilleries & Warehouse Co. v. Schrieber, 73 S. W. 769, 24 Ky. Law Rep. 2236; C., N. O. & T. P. Ry. Co. v. Palmer, 98 Ky. 382, 17 Ky. Law Rep. 998, 33 S. W. 199; Greer v. L. & N. R. R. Co., 94 Ky. 169, 14 Ky. Law Rep. 876, 21 S. W. 649, 42 Am. St. Rep. 345; Linck's Adm'r v. L. & N. R. R. Co., 107 Ky. 370, 54 S. W. 184, 21 Ky. Law Rep. 1097. But this doctrine is limited in its application to cases in which the servant is injured by the negligence of the superior officer who has immediate control of or supervision over him. To illustrate: If appellee had been injured by the negligence of the engineer or conductor on his train, he could not recover damages against the company unless they were guilty of gross neglect. The reason of this rule is that the servant, when he engaged to work, undertakes that he will assume the ordinary risks incident to the employment,

and will not hold the master liable for the ordinary negligence of those employes with whom he is engaged, whose actions and conduct he can observe and, if necessary, guard against.

This doctrine of assumed risk by the servant has been further extended by this court until now it is well established that a servant cannot recover from the master for injuries inflicted by the negligence of a fellow servant in the same grade of employment engaged in the same field of labor, and associated or working with the injured servant, however gross the negligence of the fellow servant may be. Hence, if appellee had been injured by the negligence of a fellow brakeman on the train he was working on, without any fault on the part of the conductor, or engineer, or other superior, or breach of duty on the part of the company, he could not recover in this action. In L., C. & R. Co. v. Cavens' Adm'r, 9 Bush, 559, the proposition before us was under consideration by the court, and it was said: "It is well settled that where one enters into the service of another he assumes to run all the ordinary risks pertaining to such service; and this means only that he cannot recover for any injury that his employer, by the exercise of ordinary care and prudence, could not provide against. And it is equally as well established that, where a number of persons contract to perform service for another, the employes not being superior or subordinate the one to the other in its performance, and one receives an injury by the neglect of another in the discharge of his duty, they are regarded as substantially the agents of each other, and no recovery can be had against the employer. Public policy requires that, where the laborers are co-equals and engaged in laboring in the same field, or on the

same railroad train, or in any other employment, each should exercise proper care in the conduct of the business, and look to it that his co-laborer does the same thing; and, when he is told that this care and prudence is his only remedy against danger from the negligence of those employed with him, it not only makes him the more careful, but stimulates him to see that others exercise the same caution." And this principle was fully recognized and applied in L. & N. R. R. Co. v. Sanders' Adm'r, 44 S. W. 644, 19 Ky. Law Rep. 1941; Volz v. C. & O. Ry. Co., 95 Ky. 188, 24 S. W. 119, 15 Ky. Law Rep. 727; Dana v. Blackburn, 90 S. W. 237, 28 Ky. Law Rep. 695; Martin v. Mason & Hoge Co., 91 S. W. 1146, 28 Ky. Law Rep. 1333; Pitts, Hankins & Trundell v. Centers, 98 S. W. 300, 30 Ky. Law Rep. 311.

But when the servant is injured by employes of the same master, who are not directly associated with him, and with whom he is not immediately employed, and whose qualifications for the place they occupy he has no means of knowing, and in whose selection he has no voice, and over whose conduct and actions he has no control, and against whose negligence and carelessness he cannot protect himself, he may recover damages from the master for injuries received through their negligence, whether it be ordinary or gross, and without any reference to the position or place the servant causing the injury holds. And so appellee, whose injuries were directly caused by the negligence of the employes on the work train, may recover from the company, without regard to which one of them was guilty of the neglect that resulted in his injuries. The distinction between the liability of the master for injuries to the servant, when the injury is caused by the neglect of those engaged

directly with the servant, and when it is due to the
carelessness of employes not immediately associated
with him, was first recognized by this court in L. &
N. R. R. Co. v. Collins, 2 Duv. 114, 87 Am. Dec. 486,
in a case against the company to recover damages for
personal injuries inflicted by the negligence of the
engineer, where it was said: "The company is
responsible for the negligence or unskillfulness of its
engineer as its controlling agent in the management
of its locomotives and running cars; and that respon-
sibility is graudated by the classes of persons injured
by the engineer's neglect or want of skill. As to
strangers, ordinary negligence is sufficient. As to
subordinate employes associated with the engineer
in conducting the cars, the negligence must be gross.
As to employes in a different department of service
unconnected with the running operations. ordinary
negligence may be sufficient."

And subsequently this distinction was more clearly
expressed and applied thus: In Kentucky Central
Ry. Co. v. Ackley, 87 Ky. 278, 10 Ky. Law Rep. 170,
8 S. W. 691, 12 Am. St. Rep. 480, the action was
brought for personal injuries received by Ackley,
who was engineer upon a passenger train, resulting
from a collision with a freight train of the company.
It was contended by the company that, as the injuries
were caused by the negligence of employes in the same
grade of employment as the person injured, there
could be no recovery. But the court, in rejecting
this contention, quoted with approval the principle
announced in L., C. & L. R. Co. v. Caven's Adm'r,
supra, saying: "It is argued in that case that the
rule should be applied that when a number of persons
contract to perform a service for another, the em-
ployes not being superior or subordinate to each other

in its performance, and one is injured through the
negligence of another, they are to be regarded as the
agents of each other, and no recovery can be had
against the employer. But it was held that a differ-
ent rule prevails when the employment is several,
and when one is subordinate to the other, or occupies
such a position in the service with reference to his
co-laborer as precludes him having any control over
his actions or the right to advise even as to the man-
ner in which the service is to be performed." In
Illinois Central Ry. v. Hilliard, 99 Ky. 684, 37 S. W.
75, 18 Ky. Law Rep. 505, Hilliard, who was a con-
ductor, was injured by the giving way of a ladder
on one of the cars in his train. The company
requested the court to say to the jury that the car
inspector, whose duty it was to keep the ladders in
repair, and the conductor, were fellow servants en-
gaged in the same line of service, and that Hilliard
could not recover unless the jury believed the in-
spector guilty of gross negligence. This court, in
commenting on this request, said that the instruction
was properly refused, the conductor and inspector
"acted in different spheres, and neither could or was
required to know whether the other was properly
doing his duty," and held that the company was liable
for the ordinary negligence of the inspector.

In L. & N. R. R. Co. v. Lowe, 118 Ky. 260, 25
Ky. Law Rep. 2317, 80 S. W. 768, 65 L. R. A. 122,
C., N. O. & T. P. Ry. Co. v. Hill's Adm'r, 89 S. W.
523, 28 Ky. Law Rep. 530, and L. & N. R. R. Co. v.
Hiltner, 56 S. W. 654, 21 Ky. Law Rep. 1826, the rule
announced in the Collins, Cavens, and Ackley cases
was followed. In the cases of L. & N. R. R. Co. v.
Robinson, 4 Bush, 507; L. & N. R. R. Co. v. Rains,
23 S. W. 505, 15 Ky. Law Rep. 423, and Robinson v.

L. & N. R. R. Co., 24 S. W. 625, 15 Ky. Law Rep.
626, it was apparently held that an employe on one
train could not recover from the company for the neg-
ligence of the employes on another train unless their
negligence was gross; but these cases may now be
regarded as having been overruled by the later ones
above referred to, and it must be considered as no
longer an open question in this State that there may
be a recovery in a case like the one before us, although
the negligence of the person causing it was ordinary.
Hence the court correctly instructed the jury, if they
believed from the evidence that the injury to plain-
tiff's foot was the direct result of negligence on the
part of the agents or servants of the defendant in
charge of the work train, they should find for the
plaintiff.

Nor did the court err in striking from the answer
the defense that the brakeman on the work train was
a fellow servant of appellee, and therefore the com-
pany was not responsible to appellee for his neglect.

Appellee was permitted to testify that, while he was
pinioned in the debris of the wreck, he knew it was
on fire and was fearful that he would be burned to
death before he could be extricated; and other wit-
nesses were allowed to say that they saw the fire
burning close to him.   In our opinion it was compe-
tent to permit appellee to testify as to the mental
anguish and pain that he suffered while he was fast-
ened in the wreck.   If he had not sustained any
physical injury, he could not recover at all for the
mental suffering he endured, as was said in Morse
v. C. & O. Ry. Co., 117 Ky. 11, 25 Ky. Law Rep. 1159,
77 S. W. 361: "Damages cannot be recovered for
mental suffering alone in an action for personal in-
juries based on negligence, unaccompanied by some

direct contemporaneous injury to the person.''. But
where there is a physical injury there may be a recov-
ery for it, as well as the mental pain and suffering,
occasioned by and accompanying it. Mental as well
as physical suffering directly caused by an injury is
a part of the compensation to which the injured per-
son is entitled; and in the cases, without exception,
that have come under our notice, the jury have always
been instructed that they might compensate for men-
tal as well as physical pain. Alexander v. Humber,
86 Ky. 565, 9 Ky. Law Rep. 734, 6 S. W. 453. As it
was competent for appellee to describe fully and
accurately his pain and suffering after he was extri-
cated from the wreck and during the time the cure
was being effected, and in fact up to the time of the
trial, we are unable to understand upon what theory
it can be maintained that it was not competent for
him to relate the torture he endured when under
the wreck and in momentary danger of being burned .
to death. In our opinion it is not at all material
or important whether the mental suffering is contem-
. poraneous with the reception of the injury or sub-
sequent to it, if it is the direct result of it. In the
able and exhaustive opinion in Denver & Rio Grande
R. Co. v. Roller, 100 Fed. 738, 41 C. C. A. 22, 49 L.
R. A. 77, this question was fully covered, and the con-
clusion reached that evidence of this character is
competent.

It was also admissible for appellee, as well as
those who saw him under the wreck, to describe the
surroundings and conditions that existed, so that the
jury might know all the facts and circumstances of
appellee's situation when injured. The accuracy of
the photographs was testified to by the person who
took them, and they furnished to the jury a more

complete and realistic picture of the wreck of the colliding engines than could be obtained from any other source. The wreck could not be seen by the jury, nor could it be accurately described by the witnesses; but from an inspection of the photographs the jury could obtain a more correct impression and a better understanding of the situation than in any other way. Denver & Rio Grande R. Co. v. Roller, supra, 11 Am. & Eng. Ency. of Law, p. 539, 17 Cyc. 414.

Although there was no error in the admission of evidence or the instructions given by the court, we feel constrained to reverse the judgment upon the ground that the verdict is excessive. If there was sufficient evidence to show appellee's injuries were permanent, we would not interfere with the finding of the jury upon this point; but there is not. That he sustained severe injury, not only to his foot but other parts of his body, there is no doubt; but, whether they are permanent or not is another question. Appellee, in answer to the question, "Is your foot permanently injured or not?" answered, "I believe it is." Dr. Sorry, the only physician who testified for appellee, said that he had made only one examination of appellee's foot, and that a few days before the trail. The material parts of his evidence are as follows: "Q. Tell the character of his injuries from your examination, and whether or not you think it is permanent. A. Yes, sir; I think it is. Q. Did you make an examination with the X-rays to ascertain whether or not the bones were sound? A. no, sir. Q. You predicate your opinion about the permanency of the injury upon the fact that it should turn out that the bone is diseased? A. I take it the bones were diseased from the fact of the time it has

been healing. If there was no disease of the bone, it seems like it would heal. Q. You predicate your answer solely upon that? A. From the length of time and the appearance of the wound. Q. You don't know whether or not the bone is injured? A. No, sir; the symptoms indicate that, by having a running sore for several months. Q. If there has been no injury to the bone, and no diseased condition of the bone, do you think it will not heal? A. If there is no disease of the bone, that flesh wound will heal yes, sir."

For appellant the two physicians who treated appellee were introduced, and testified that they made an examination of appellee's foot with the X-rays, and in answer to questions said: "Q. I will ask you whether any of the bones of his foot or ankle or leg are broken or affected. A. No, sir; they are not. Q. Tell the jury how you know it? A. Well, simply by examination at the time of the accident, and while the wound was fresh. Q. Have you ever examined it with the X-rays? A. Yes, sir; examined it with the X-rays, and I also asked Dr. Nesbitt to examine it with them. Q. Did both of you examine it with the X-rays? A. Yes, sir. Q. Is there any injury at all to the bone? A. No, sir; there is not. Q. What was the nature of the wound, that causes it to be so long healing? A. It was a flesh wound and considerable bruise; the muscles torn, and the skin considerably bruised, and a tear and laceration also." These doctors also testified in substance and effect that his injuries were temporary. It will be observed that the physician who testified for appellee made only one examination, and that without using the X-rays, and his conclusion that the foot was permanently injured was based on the fact that in his opin-

ion the bones of the foot were diseased; while the physicians who treated him for the injury, and who examined his foot frequently and with the X-rays, say that the bones are not injured, and that in time the foot will be restored to its normal condition.

We are not aware of any case in which the court has sustained a verdict as large as this one unless the injuries were permanent. The fact that the negligence was gross, and that punitive damages were allowed, and that appellee was entitled to more than mere compensation for his mental and physical suffering, does not imply that a jury are at liberty, unrestrained, to award by way of punitive damages any amount, however large it may be. This court has the same power and discretion to set aside a verdict, when excessive, in cases involving punitive damages as it has where only compensation is recovered. In every case, if the verdict appears to have been given under the influence of passion or prejudice, a new trial will be granted. L. & N. R. R. Co. v. Long, 94 Ky. 410, 15 Ky. Law Rep. 199, 22 S. W. 747; Standard Oil Co. v. Tierney, 92 Ky. 367, 13 Ky. Law Rep. 626, 17 S. W. 1025, 14 L. R. A. 677, 36 Am. St. Rep. 595. As was said by this court in Louisville Railway Co. v. Minogue, 90 Ky. 369, 12 Ky. Law Rep. 378, 14 S. W. 357, 29 Am. St. Rep. 378: "It is impossible to measure with anything like absolute certainty the amount of punitive damages proper in a case, or the extent of some of the elements of those which are compensatory. The opinion of a jury has been, and properly, no doubt, regarded as the best means of even a fair approximation, and every verdict should be treated prima facie as the result of honest judgment upon their part. They are the constitutional triors of the facts of the case, and courts should

exercise great caution in interfering with their verdicts. Litigants must not be left, however, to their arbitrary will, and be without remedy in cases where verdicts can be accounted for only upon the theory that they are the result of an improper sympathy or unreasonable prejudice.''

It will readily be conceded that it is peculiarly within the province of the jury to fix the amount of damage that a person is entitled to for mental and physical suffering, and will also be agreed that there is no rule by which the amount that should be awarded can be measured. For these reasons this court has always been reluctant to interfere with the finding of a jury upon the question of damages, and especially is this true when the injury is permanent, or of such character as to disable the injured person from pursuing his usual occupation or employment, or one that will cause him to suffer serious pain probably through life. But, if appellee's foot should be fully restored, and there is a complete recovery, and he is placed in the same physical condition as he was before the injury, it appears to us at first blush that the verdict is too large. The future effect of the injury should be shown with reasonable certainty to authorize damages upon the score of permanent injury.

For the error in the amount of damages, the judgment must be reversed, with directions for a new trial.